UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| ADAM I. LEWIS | PLAINTIFF |
| V. | CIVIL ACTION NO. 3:23-CV-00472-DPJ-ASH |
| FUSIO MEDICAL DEVICES, LLC AND ALEVIO, LLC. | DEFENDANTS |

ORDER

This matter is before the Court on Defendants Fusio Medical Devices, LLC and Alevio, LLC's ("Defendants") Motion for Protective Order and/or Order Quashing or Modifying Subpoenas [60] and Plaintiff Adam Lewis's Motion to Compel [62]. Having considered the record and the applicable law, the Court finds that Defendants' Motion [60] should be granted in part, and that Plaintiff's Motion to Compel [62] should be denied.

I.     Factual Background

On February 1, 2016, the parties entered into two nearly identical physician royalty agreements for two different medical devices. Plaintiff's July 2023 complaint alleges Defendants breached the agreements by: 1) failing to timely pay him royalties starting in the second quarter of 2021; 2) failing to provide him royalty reports for those same quarters; and 3) failing to allow him to examine the books and records. Am. Compl. [14] at 22–25. Defendants acknowledge they failed to timely pay royalties and provide royalty reports to Plaintiff, but they claim they have since paid outstanding royalties to him and are now current. Defs.' Memo. [61] at 3. They point to two "Royalty Analysis Workbooks," which they claim list every sale on which a royalty was due from the inception of the royalty agreements in 2016 through the third quarter of 2023. Defendants contend that these Royalty Analysis Workbooks accurately reflect the gross sales, net sales, and payments owed to Plaintiff.

1

After issuing their post-suit catch-up payments, Defendants claim they have timely provided full royalty payments accompanied by detailed workbooks for each subsequent quarter through the present (*i.e.*, through the second quarter of 2024).

A fundamental issue concerning Defendants' calculation of the royalty payments and the backup documentation underlies this discovery dispute. Plaintiff argues that he is entitled to examine *all of* Defendants' books and records to determine gross sales of the entire company. Defendants believe financial discovery should be limited to the actual products in the parties' agreements and the contractual language for the royalty calculation.

On September 11, 2024, Defendants filed their Motion [60] regarding two subpoenas: one served on Ralph Yelverton, an attorney for Defendants but not counsel of record in this action, and the other on Defendants' accountant, Brad Hatchett. In their Motion [60], Defendants ask the Court to quash the subpoena on Yelverton in its entirety and to quash or modify the subpoena on Hatchett because both subpoenas seek documents which contain "sensitive, confidential, commercial information which is not relevant to the claims and defenses." Defs.' Memo. [61] at 2. In the alternative, Defendants request a protective order. Defendants assert, and Plaintiff does not dispute, that they have standing to challenge the subpoenas. In Plaintiff's Motion [62], he asks that the Court compel Defendants to serve additional responses to the discovery requests.

## II.   Standards

"[D]iscovery from a third party as permitted through a subpoena issued under Rule 45 is limited to the scope of discovery permitted under Rule 26(b)(1) in the underlying action." *MetroPCS v. Thomas*, 327 F.R.D. 600, 609–10 (N.D. Tex. 2018); *Hahn v. Hunt*, No. CV 15-2867, 2016 WL 1587405, at *1 (E.D. La. April 20, 2016) ("Third-party subpoenas are discovery

devices which, although governed in the first instance by Rule 45, are also subject to the parameters established by Rule 26."). Federal Rule of Civil Procedure 26 sets forth the permissible scope of discovery. It allows for broad discovery of

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Both Rules 45 and 26 authorize the court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery [under Rule 26(b)(1)] or otherwise violates the parameters of Rule 45." *Hahn*, 2016 WL 1587405, at *2.

### III. Analysis

#### A. Defendants' Motion for Protective Order and/or Order Quashing or Modifying Subpoenas [60]

A party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). And Rule 45 states that a court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv); *see Ishee v. Fed. Nat. Mortg. Ass'n*, No. 2:13-cv-234-KS-MTP, 2014 WL 2162753, at *1 (S.D. Miss. May 23, 2014).

Under Rule 45(d)(3)(A)(iv), the Court "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Courts have found that a subpoena is overly broad on its face where the subpoena "seek[s] all documents concerning the parties to [the underlying] action, regardless of

3

whether those documents relate to that action and regardless of date." *In re O'Hare*, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012). The Court also considers whether "[t]he requests are not particularized" and if "[t]he period covered by the requests is unlimited." *Id.* "[T]he burden is on the party moving to quash a subpoena duces tecum to show why documents responsive to the subpoena should not be produced." *Scott v. S. Elec. Supply Co.*, No. 3:13-CV-119-SA-SAA, 2013 WL 12411044, at *1 (N.D. Miss. June 11, 2013) (citating 81 Am. Jur. 2d Witnesses § 25 (2013)).

The Court's analysis is made difficult by the fact that, with limited exception, both Defendants and Plaintiff address the subpoenas in sweeping generalities rather than the specific requests. Defendants argue that the subpoenas are "so broad that they cannot actually discern with specificity what documents plaintiff seeks," and they point to the first request in the subpoena as an example of this. *See* Defs.' Memo. [61] at 9, 13. The Court agrees, at least as to Request No. 1. Fairly read, this request is so broad that it could encompass any document or communication related, even tangentially, to Defendants' financial affairs. This request exceeds the permissible scope of discovery, lacks the needed particularity, and places an undue burden on the subpoenaed persons.

As to the other requests, however, Defendants do not meet their burden. Based on the argument that Request No. 1 is overly broad, Defendants essentially argue that the "same is true of all 12 document requests." Defs.' Memo. [61] at 9; *see also id.* at 13. The Court disagrees. While there are some problems that the Court will address, many of the other requests are far more specific than the first. Defendants do contend in a footnote that there is significant overlap between what Plaintiff has already requested from Defendants in discovery and the requests in the subpoenas. They offer as support a chart categorizing Plaintiff's 30 requests for production of documents and 12 subpoena requests into 11 substantive buckets. But simply claiming overlap is

4

not the same as *showing* it is significant, nor is it sufficient to establish that all of the subpoena requests are overly broad or present an undue burden. Defendants cannot point to the first request as a basis to quash all eleven others. They have failed to carry their burden to quash the subpoenas in their entirety. *See Scott*, 2013 WL 12411044, at *1.

That being said, several of the subpoena requests are problematic and the Court will protect the persons subject to the subpoenas from undue burden. *See Vancleave v. Linquist*, No. 4:23-CV-797-KPJ, 2024 WL 3834385 (E.D. Tex. Aug. 14, 2024) (finding subpoenas issued to non-parties were duplicative and relevant information sought was already obtained). Because the requests to Yelverton and Hatchett are identical, the Court addresses them collectively below.

- Request No. 2: The Court agrees with Defendants that the phrase "reflect or tend to reflect" is unclear. Defs.' Memo. [61] at 13. The Court modifies this request by substituting "show" for "reflect or tend to reflect."

- Request No. 3: The property to which the physician royalty agreements apply is not in dispute and this request is beyond the scope of discovery. The Court quashes this request as creating an undue burden.

- Request No. 4: This request seeking all documents that "reflect or tend to reflect the dispute" between the parties from the second quarter of 2021 to the present is not only unclear, but overly broad and lacks specificity. The Court quashes this request as creating an undue burden.

- Request No. 5: The Court agrees with Defendants that the phrase "reflect or tend to reflect" is unclear. The Court modifies this request by substituting "show" for "reflect or tend to reflect."

- Request Nos. 6, 7, & 8: The Court agrees with Defendants that the phrase "reflect or tend to reflect" is unclear. The Court modifies these requests by substituting "show" for "reflect or tend to reflect." These requests are also ambiguous about whether they are directed at the products that are the subject of the physician royalty agreements (the Sacroiliac Joint Fusion System and Bone Dowels) or every "product or intellectual property" of Defendants. Requests concerning only the actual products in the royalty agreements are proper. The Court further modifies these requests to omit the clause (including punctuation) "product or intellectual property," from each request.

- Request No. 9: The Court agrees with Defendants that the phrase "reflect or tend to reflect" is unclear. The Court modifies this request by substituting "show" for "reflect or tend to reflect."

- Requests Nos. 10-11: The scope of discovery for Plaintiff's inspection of Defendants' books and records is at issue in Plaintiff's motion to compel. These requests are duplicative of Plaintiff's written discovery to Defendants. The Court will not allow Plaintiff to circumvent Defendants' objections to the scope of these requests by sending a subpoena to Defendants' lawyer and accountant. Further, as explained below, the requests exceed the permissible scope of discovery. The Court quashes these requests as creating an undue burden.

- Request No. 12: The Court agrees with Defendants that the phrase "reflect or tend to reflect" is unclear. The Court modifies this request by substituting "show" for "reflect or tend to reflect."

Defendants raise two other arguments in their motion: privilege and confidentiality. Starting with privilege, they claim the subpoena on Yelverton should be quashed in its entirety because Defendants engaged Yelverton as outside counsel at Defendants' incorporation.[1] Defendants make a blanket claim for privilege: "Any documents [Yelverton] sent to or received from Defendants were sent and received to facilitate his legal representation of Defendants." Defs.' Memo. [61] at 8; *see also id.* ("The same is true of any work product that Yelverton prepared in reliance on communications which facilitated his representation of Defendants.").

While this *could* be the case, it is not necessarily so. For example, "[f]inancial transactions between the attorney and client, including the compensation paid by or on behalf of the client . . . are not within the privilege except in special circumstances." *United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir. 1981). And "[a]n attorney who acts as his client's business advisor, or his agent for receipt or disbursement of money or property to or from third parties . . . , is not acting in a legal capacity, and records of such transactions are not privileged." *Id.* There are several factual differences between *Davis* and this case, but *Davis* demonstrates why Defendants' global assertion of protection over every document Yelverton sent to or received from Defendants is wrong.

There is another problem with Defendants' privilege claims: they fail to log *any* of the documents they contend are subject to the attorney-client privilege or work product protection. *See* L.U. Civ. R. 26(e) ("A party withholding information claimed privileged or otherwise protected must submit a privilege log . . . ."). Defendants blame the lack of a log on the breadth of Plaintiff's subpoenas. They say they cannot provide specific assertions of privilege in a log

---

[1] Yelverton apparently still represents Defendants, although he is not counsel of record in this litigation.

7

because the subpoenas do not identify with reasonable particularity what Plaintiff seeks. Defs.' Reply [86] at 6. The Court in *Ellis* addressed (and rejected) a similar blanket claim of privilege:

> Although the plaintiff cites to *Kovel* and *El Paso Co.*, she fails to assert the privileges with respect to specific documents, and instead makes the very type of "blanket assertion" the court cautioned against in *Davis*, 636 F.2d at 1044 n.20, and rejected in *El Paso Co.*, 682 F.2d [530,] 541 [(5th Cir. 1982)]. "Such assertions disable the court and the adversary party from testing the merits of the claim of privilege." 682 F. 2d at 541. The critical piece in determining the applicability of the privilege hinges on whether the communication was made to seek legal advice, or simply to seek accounting services. *Kovel*, 296 F.2d [918,] 922 [(2d Cir. 1961)].

*Ellis v. United States*, No. 3:14-MC-00521-CWR-LRA, 2015 WL 7289497, at *6 (S.D. Miss. Nov. 16, 2015). While *Ellis* involved an IRS summons to an accountant, the rule is no less applicable to Yelverton. To rely on a claim of privilege, the proponent bears the burden to demonstrate it applies on a document-by-document basis.[2] *See* L.U. Civ. R. 26(e). Defendants fail to do this.

As to Hatchett, Defendants claim privilege because he acted as a client representative when interacting with Yelverton during Yelverton's representation of Defendants. As with Yelverton, this might be true sometimes. But it certainly is not the case all the time. *See*, *e.g.*, *Ellis*, 2015 WL 7289497, at *6 (citing *Davis*, 636 F.2d at 1043). For the same reasons as Yelverton, Defendants' privilege claims for Hatchett fail at this time.[3]

---

[2] A vague or overly broad subpoena may very well impede the ability to prepare a specific privilege log. But Defendants fail to explain why that would excuse the specificity requirement for privilege assertions rather than shift the analysis under Rule 45 to questions of undue burden and the scope of discovery. *See Nationwide Prop. & Cas. Ins. Co. v. Albert Vaughan & Assocs., Inc.*, 1:12-CV-00396-HSO-RHW, 2013 WL 12216684 (S.D. Miss. Dec. 11, 2013) (quashing subpoenas issued to law firm based on overly broad requests).

[3] Although Defendants have failed to carry their burden to quash the subpoenas on this basis, Yelverton, Hatchett, or Defendants may assert the attorney-client privilege or work-product protection to the modified subpoenas provided they serve a satisfactory privilege log. It bears reminding that the Federal Rules of Civil Procedure require a party claiming privilege to "(i) expressly make the claim; and (ii) describe the nature of the documents, communications or tangible things not produced or disclosed—and do so in a manner that, without revealing

Defendants' final argument is that Plaintiff's subpoenas seek financial and commercial information that is confidential and could place Defendants at a competitive disadvantage if made public. The Court has previously addressed a similar argument raised by Plaintiff (at a discovery conference) and Thornburg (in response to Defendants' subpoena). *See* Order [76]; *see also* Order [84]. Defendants advocated for a protective order as an appropriate remedy to Thornburg's claim that the subpoena required disclosure of confidential and proprietary information. It does appear that at least some of the documents Plaintiff seeks may not be confidential at all. For example, Request No. 9 seeks documents showing *when* Defendants provided royalty reports to him. Nonetheless, for the same reasons the Court articulated in its September 20, 2024 Order, a protective order is appropriate under these facts to address Defendants' concerns. The parties are directed to meet and confer on a proposed agreed protective order that will provide for the ability of Yelverton, Hatchett, and/or Defendants to designate specific documents (as opposed to the entire production) as confidential. If the parties cannot agree on a proposed protective order, they must contact the Court via email to schedule a discovery conference prior to the ordered production date discussed below.

## B. Plaintiff's Motion to Compel [62]

Plaintiff asks the Court to compel Defendants to respond to several of his discovery requests. Pursuant to Rule 37 of the Federal Rules of Civil Procedure, "a party may move for an

---

information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(a). The Local Rules go a step further and require a privilege log to contain at least the following information: "name of the document, electronically store information, or tangible thing; description of the document, electronically stored information, or tangible thing, which description must include each requisite element of the privilege or protection asserted; date; author(s); recipient(s); and nature of the privilege. L.U. Civ. R. 26(e). The Local Rules caution litigants that the failure to provide a log "subjects the withholding party to sanctions under Fed. R. Civ. P. 37 and may be viewed as a waiver of the privilege or protection." *Id.*

order compelling disclosure or discovery" on "notice to other parties and all affected persons." Fed. R. Civ. P. 37(a)(1). "The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 559 (N. D. Tex. 2010) (internal citations omitted). This burden of establishing relevancy in a motion to compel stems from Rule 26, *see Amos v. Taylor*, No. 4:20-CV-7-DMB-JMV, 2020 WL 7049848, at *5 (N. D. Miss. Dec. 1, 2020), which outlines the scope of discovery.

The briefing is problematic. Plaintiff cites only a single case in support (and then only for a general proposition). With a few exceptions, he also provides very little analysis addressing the objections raised by Defendants. Defendants complicate matters further because instead of addressing each interrogatory and request, they rely on broad arguments about proportionality and the scope of discovery but leave the Court to guess how these arguments connect to each of the specific interrogatories and requests.

From what the Court can construe, the core of the underlying dispute concerns competing interpretations of the Royalty Agreement and the proper scope of discovery into Defendants' books and records. Plaintiff asserts he is entitled to inspect "all books and records" of Defendants pursuant to the Royalty Agreement. Memo. [62] at ¶ 5. Defendants argue that Plaintiff is permitted to inspect only the books and records that document gross sales, net sales and amounts payable to Plaintiff. The disputed portion of the Royalty Agreement states the following:

> During the Term, Fusio Medical Devices shall keep full and accurate books and records, which shall document gross sales, net sales and amounts payable to Developer. Fusio Medical Devices shall permit Developer, at his sole expense, to retain an independent Certified Public Accountant, agreeable to Fusio Medical Devices, to inspect and examine the books and records of Fusio Medical Devices upon Five (5) business days' notice.

Physician Royalty Agreement [79-1] at ¶ IV.

Under Mississippi law, when interpreting a contract, a court "must look to the 'four corners' of the contract whenever possible to determine how to interpret it." *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (Miss. 2005). "If a contract is clear and unambiguous, then it must be interpreted as written." *United States Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008). In other words, only when a contract is unclear or ambiguous may a court go beyond the "four corners" to determine the parties' intent. *Facilities, Inc.*, 908 So. 2d at 111.

The Court agrees that Defendants interpretation is correct: Plaintiff is only permitted to inspect the books and records related to payments made to Plaintiff. While the Royalty Agreements do not define the scope of discovery per se, they are material to the Court's analysis. Plaintiff's claims in this lawsuit are that Defendants breached the Royalty Agreements by failing to pay him proper royalties, provide him proper documentation, and allow him to conduct the inspection authorized by the agreements. Based on the claims asserted, Plaintiff has failed to demonstrate that a review of all of Defendants' books and records is within the scope of discovery. Likewise, the Court finds that Plaintiff has failed to show he is entitled to discovery of all of Defendants' gross sales and financial information for its business operations outside the scope of the sale of the two products at issue in the Royalty Agreements.

In any event, Defendants assert that they have already allowed Plaintiff to examine "every sales invoice for every sale (of any product) since February 2016 (i.e., the 'total company invoices' haystack)," and that this examination occurred on August 14-15, 2024. Defs.' Memo. [80] at 6-7. Plaintiff does not dispute the inspection took place, but complains her expert was overwhelmed and that she needs Defendants' entire QuickBooks file, tax returns, and bank

statements to make sense of the data. Plaintiff does not claim he requested an opportunity to conduct a subsequent inspection and was denied. Based on this record, the Court finds the discoverable books and records have already been produced in the form of an inspection. Plaintiff has failed to articulate a basis to compel their production in a different or additional form.

As to the requests Plaintiff asserts for all of Defendants' financial records (tax returns, bank records, *etc*.), the Court finds these arguments are foreclosed for two reasons. First, the Court has already determined that all of Defendants financial records are beyond the scope of discovery in this lawsuit over royalty payments concerning two products. Second, Plaintiff has failed to provide any meaningful analysis beyond the global discussion about the scope of what books and records are discoverable. Plaintiff addresses the other requests in non-specific and general terms, many times in clusters of two requests (and as many as six at a time), and often with a single sentence of conclusory argument. This is not enough to meet the burden to compel production. *See* L.U. Civ. R. 37(b) ("The objections, grounds and reasons must be written in immediate succession to the quoted discovery request. The objections and grounds must be addressed to the specific interrogatory, request for production, or request for admission and may not be general in nature.").

Based on the Court's interpretation of the scope of books and records subject to discovery and Plaintiff's failure to demonstrate he is entitled to an order compelling any further production, the Court finds that Plaintiff's motion should be denied as to Interrogatory No. 21 and Request for Production Nos. 2, 3, 4, 5, 6, 7, 11, 12, 17, 22, 23, and 30. As to the remaining items, the Court finds that Plaintiff has failed to demonstrate that Defendants' answer to Interrogatory Nos. 7 (which Defendants state they have supplemented with their response) and 10 are deficient.

Plaintiff appears dissatisfied with Defendants' *answers* (not the objections), but he has not carried his burden to demonstrate he is entitled to an order compelling different answers.

## IV. Conclusion

The Court has considered all arguments. Those not directly addressed would not have changed the outcome. For all these reasons, the Court grants Defendants' Motion for Protective Order and/or Order Quashing or Modifying Subpoenas in part by modifying the Yelverton and Hatchett subpoenas as stated above, quashing Request Nos. 1, 3, 4, 10, and 11, and authorizing appropriate confidential documents to be produced subject to a protective order. Defendants' motion is otherwise denied. The Court also finds that Plaintiff's Motion to Compel should be denied. Yelverton and Hatchett are ordered to produce the requested documents by October 30, 2024. Defendants, who have moved to quash on behalf of Yelverton and Hatchett, are ordered to immediately serve a copy of this order on them. The parties are directed to submit their agreed protective order no later than 12:00 pm on October 25, 2024.

**SO ORDERED AND ADJUDGED** this the 18th day of October, 2024.

s/ *Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE